IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF ARIZONA

|  |  |
|---|---|
| ORLANDO ISSAC CALLOWAY,<br><br>Debtor. | Chapter 7<br><br>Case No. 08-18561-SSC<br><br>(Not for Publication- Electronic Docketing ONLY)<br><br>MEMORANDUM DECISION RE WILLFUL VIOLATION OF THE AUTOMATIC STAY |

I. INTRODUCTION

On February 4, 2009, Orlando Calloway, the Debtor, filed a letter with the Court outlining a potential willful violation of the automatic stay by Cactus Jack Auto Sales ("Cactus Jack"). The Court construed the request for relief as a Motion for Citation of Contempt and Motion for Assessment of Sanctions.[1] The Court executed an order setting an expedited hearing concerning the alleged violation of the automatic stay by Cactus Jack.[2] The Order stated that an individual debtor injured by any willful violation of the stay could request relief from the bankruptcy court under 11 U.S.C. §362(k) for actual damages and, under appropriate

---

**1.** Docket Entry No. 19.

**2.** Docket Entry No. 20. The Order erroneously stated that the Debtor filed the Motion on February 4, 2008. In reality, it was February 4, 2009.

1

circumstances, for punitive damages.[3] The initial hearing was scheduled for February 19, 2009, at which only the Debtor attended.[4] Mr. Calloway stated that his car had been repossessed after Cactus Jack had been notified of the filing of his bankruptcy petition. He requested that although the vehicle had been returned, he receive actual and punitive damages for Cactus Jack's willful violation of the automatic stay. The Court set the matter for an evidentiary hearing, reflecting in the minute entry that if Cactus Jack failed to appear at the evidentiary hearing, the Court would proceed with the hearing and that it might enter a judgment on the issues presented at the conclusion of the hearing. On March 26, Cactus Jack, through its counsel, filed a responsive pleading.[5] The Court conducted an evidentiary hearing on April 1, 2009, at which the Debtor, Cactus Jack, and its counsel were present. At the conclusion of the hearing, each side presented closing argument. Thereafter the Court took this matter under advisement.

This Memorandum Decision constitutes this Court's findings of fact and conclusions of law. Fed.R.Civ.P. 52, Bankruptcy Rule 7052. The Court has jurisdiction over this matter, and this is a core proceeding. 28 U.S.C. §§1334 and 157. The Debtor filed his bankruptcy petition on December 22, 2008; therefore, the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, "BAPCPA" (Pub.L.No. 109-8, §1501(b)(1), 119 Stat. 23, 216), applies to this contested matter.

---

**3.** The Court set forth the test, as enunciated in the Ninth Circuit decision of In re Bloom, 875 F.2d 224, 227 (9th Cir. 1989), in the Order setting the expedited hearing. Although the Bloom decision referred to Section 362(h), that subsection has been re-designated as Section 362(k), pursuant to the amendments to the Bankruptcy Code enacted by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 "BAPCPA" (Pub.L.No. 109-8, §1501(b)(1), 119 Stat. 23, 216).

**4.** The docket reflects appropriate notice to Cactus Jack of the Order setting the expedited hearing. See Notice attached to Docket Entry No. 21, the Order setting the expedited hearing.

**5.** Docket Entry No. 29.

2

In this Memorandum Decision, the Court has set forth its findings of fact and conclusions of law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure. The issues addressed herein constitute a core proceeding over which this Court has jurisdiction. 28 U.S.C. §§ 1334(b) and 157(b) (West 2008).

## II. FACTUAL DISCUSSION

The Debtor filed his Chapter 7 petition on December 22, 2008. That same day, the Court notified the Debtor, through a deficiency notice, that he had failed to file a master mailing list, in the appropriate format, with the Court. On December 26 and December 29, 2008, the Debtor filed two separate mailing lists with the Court, each of which contained the name of Cactus Jack and set forth the Creditor's address on Camelback Road in Phoenix, Arizona.[6] Subsequently the Court sent out notice to all creditors of the Debtor's bankruptcy filing and the date for the Section 341 Meeting of Creditors.[7] The Section 341 Meeting of Creditors was scheduled for January 27, 2009.[8] The Debtor testified that he also contacted Cactus Jack by telephone on December 22, 2008, to notify it of his bankruptcy petition filing. The dispute in the case revolves around the repossession of the Debtor's 2002 Kia Rio Cinco vehicle.[9]

On January 28, 2009, the Debtor's vehicle was repossessed at his place of work around 8:00 a.m. The individual that was repossessing the vehicle was not aware that the Debtor had filed a bankruptcy petition. He refused the Debtor's request that the Debtor be able to retrieve personal articles from the vehicle before it was towed away. The Debtor testified that he

---

**6.** Docket Entries No. 13 and 15.

**7.** Docket Entry No. 16.

**8.** Docket Entries No. 2 and 14. Docket Entry No. 14 was the notice sent to creditors on December 29, 2008, since the Debtor did not file a proper Master Mailing List with the Court until December 26 and 29, 2008. See n.6 *supra*.

**9.** Docket Entry No. 17, Schedule C and D thereto.

3

then took time off from work to consult an attorney in Gilbert about what to do next.[10] He estimated that it took him about 2 hours to obtain a ride to the attorney's office and consult with the attorney. The attorney contacted Cactus Jack and was notified that it needed "proof" of the Debtor having filed a bankruptcy petition. She complied by sending the information to the Creditor around 2:00 p.m. on January 28. At 3:30 p.m., she contacted the Debtor and notified him that he could pick up the vehicle that day from Cactus Jack. Unfortunately given the late notification, the Debtor was unable to collect the vehicle until the next day. On January 29, 2009, the Debtor obtained a ride to Cactus Jack to pick up his vehicle. He was supposed to be at work at 6:00 a.m. that day, but had to request time off to obtain his vehicle. The Debtor testified that he missed approximately 8 hours of work, at the rate of $17.17 per hour, for actual damages in the amount of $137.36.[11] The Debtor also testified that he was humiliated at his place of employment when his vehicle was repossessed in front of other employees. As a result, he requested punitive damages for the emotional distress that he suffered.

        The Debtor conceded that at the time he filed his bankruptcy petition, he was at least 3 payments in arrears to Cactus Jack. He testified that when he purchased the vehicle from Cactus Jack, it was defective, shaking "heavily" when it was driven. As a result, he consulted a third-party about repairs to the vehicle and was advised that it would cost around $1,800 to repair the vehicle. His girlfriend ultimately paid for the repairs of the vehicle.[12] The Debtor

---

    **10.** The Debtor's pay stub reflects that he pays $11.25 per month for some type of pre-paid legal services plan that is available through his employer. See Exhibit 2. Moreover, his Schedules and Statement of Financial Affairs reflect that he paid an attorney the sum of $1,120 pre-petition to assist him with the filing of his bankruptcy petition. See Docket Entry No. 17, Statement of Financial Affairs, pg. 4. However, the Debtor filed this current Motion *pro se,* and he did not request any attorneys' fees and costs in this contested matter. The Court assumes that the Debtor must have contacted the plan's attorney to assist him, and she did not separately charge him for the legal advice provided concerning the repossession of his vehicle.

    **11.** Exhibit 2 sets forth the Debtor's rate of pay.

    **12.** Exhibit 3. The actual cost was $1,888.42. A series of mounts needed to be replaced on the vehicle.

4

filed a complaint with the Better Business Bureau concerning Cactus Jack's sale of a defective vehicle.[13] After the Better Business Bureau was unable to resolve the controversy, the Debtor stopped making payments on the vehicle. The Debtor's Statement of Intention filed in this case reflects that the Debtor intended to surrender the vehicle.[14] For purposes of establishing a time frame that is important to the legal analysis of this decision, the thirty-day period after the first date set for the 341 Meeting of Creditors in this case would have expired thirty days after January 27, 2009, or by Thursday, February 26, 2009.

Mr. Ron Newman, on behalf of Cactus Jack, conceded that a violation of the automatic stay had occurred, but stated that it was inadvertent. Mr. James Look ("Mr. Look"), the recovery manager for Cactus Jack, testified that when the Creditor is notified of a bankruptcy filing, the file is normally "flagged." If the file is flagged, no further action is taken until a discharge is received by the debtor or the bankruptcy is no longer pending.[15] He testified that in this case, the Debtor's file arrived in his department, but was not flagged. He did not realize that the Debtor had filed a bankruptcy petition, so he ordered a third party to repossess the vehicle. He noted that the individual who had failed to flag the file was no longer with the Creditor. Mr. Look stated that because the repossession occurred early in the morning, prior to Cactus Jack being open for business, there was no way to stop the repossession. Mr. Look conceded that he did not leave a cell phone or other number with the third party repossessing the vehicle in case the third party encountered any problems. Mr. Look testified that he received a call from the Debtor's attorney advising Mr. Look that the repossession was improper. Although the Debtor was certain that the attorney asked that the vehicle be delivered to the Debtor at a designated

---

**13.** Exhibit 1.

**14.** Docket Entry No. 17, the Chapter 7 Individual Debtor's Statement of Intention.

**15.** Cactus Jack did not set forth any facts or procedures that reflected that it would take action if an individual debtor did not perform on his or her intentions within 30 days of the First Meeting of Creditors.

5

location, Mr. Look denied any such request. He testified that the Debtor contacted him later in the day and stated that he could not arrive at the Cactus Jack place of business prior to its closure. Rather than make accommodations for the Debtor, the Debtor was required to take time off from work the next day to pick up his vehicle from the Cactus Jack location. Cactus Jack apologized to the Debtor for its actions during the course of the hearing.

### III. LEGAL DISCUSSION

#### A. Willful Violation of the Stay

The unusual facts in this case cause this Court to balance the unanticipated repossession of the Debtor's vehicle, and the legitimate embarrassment that it caused him at his place of work, with the Debtor's intention to surrender a vehicle which he considered a "lemon."

The Debtor encountered problems with the vehicle shortly after he purchased it from Cactus Jack. He testified that the vehicle shook "heavily" whenever he drove it, and he was ultimately required to replace the mounts on the vehicle. Although he reported his problems to the Better Business Bureau, Cactus Jack never responded, and there is no evidence to reflect that it ever attempted to work with the Debtor to resolve the vehicle's problems. Cactus Jack did have procedures in place concerning how to deal with an individual that filed a bankruptcy petition, by "flagging" the file, with no further action to be taken until the debtor received a discharge or the bankruptcy case was no longer pending. However, the facts in this case reflect that its procedure to flag files did not work in this case. Of more concern to the Court is the fact that Cactus Jack had no procedures in place in case the third party repossessing the car, when Cactus Jack was not open for business, had any questions about whether the repossession was proper, or in this case, how to handle the Debtor's request to remove his personal property from the vehicle before it was repossessed. Cactus Jack, even after learning that its repossession was not proper, made no extra effort to return the vehicle to the Debtor, requiring him to take off from work and travel to the Cactus Jack location. Although Cactus Jack apologized to the

6

Debtor at the hearing, the Court questions the actions of Cactus Jack. They reflect a certain lack of sincerity as far as the apology goes, and a certain amount of arrogance.[16]

Section 362(h) allowing a debtor to recover compensatory and, in some cases, punitive damages has been modified somewhat by the changes enacted as a result of BAPCPA. Section 362(h) was re-designated Section 362(k), and the provision currently states:

> (1) Except as provided in paragraph (2), an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.
> (2) If such violation is based on an action taken by an entity in the good faith belief that subsection (h) applies to the debtor, the recovery under paragraph (1) of this subsection against such entity shall be limited to actual damages.

The Ninth Circuit decision of <u>In re Bloom</u>, 875 F.2d 224, 227 (9th Cir. 1989) outlines the analysis that must be done by a court when it is considering whether a willful violation of the automatic stay has occurred. A willful violation of the stay occurs when 1) a creditor had notice of the debtor's bankruptcy filing, and 2) the creditor's actions that violated the stay were intentional. The Court held that for purposes of 362(h):

> A "willful violation" does not require a specific intent to violate the automatic stay. Rather, the statute provides for damages upon a finding that the defendant knew of the automatic stay and that the defendant's actions which violated the stay were intentional. Whether the party believes in good faith that it had a right to the property is not relevant to whether the act was "willful" or whether compensation must be awarded.

<u>Id</u>. at 227.

---

**16.** For instance, why didn't Cactus Jack respond to the Better Business Bureau inquiry? Why didn't Cactus Jack attempt to work with the Debtor to resolve the problems with his vehicle? Why didn't Cactus Jack return the repossessed vehicle to the Debtor and apologize to him then? Why did it take a court hearing to obtain an apology, a simple act of courtesy? Why didn't Cactus Jack have some type of redundancy in its procedures to make sure that bankruptcy filings were duly noted on the files? Why didn't Cactus Jack have a way of contacting the third-party repossession company after hours in case a problem arose?

7

Even though the Bankruptcy Code has been amended to add a new Section 362(k)(2), the basic steps to determine whether a willful violation of the stay has occurred have not changed. Rather, the amendments to Section 362 discuss the type of damages, under certain circumstances, for which a creditor may be responsible if there is a willful violation of the stay.

When a creditor lacks notice of a debtor's bankruptcy, acts in violation of the stay may be inadvertent; however, such acts become willful stay violations when the creditor learns of the debtor's bankruptcy but fails to take reasonable steps to remedy the violation. Abrams v. Southwest Leasing & Rental, Inc. (In re Abrams), 127 B.R. 239, 241-44 (9th Cir. B.A.P. 1991).[17] The law imposes an "affirmative duty to remedy the automatic stay violation" when the creditor learns of the debtor's bankruptcy. In re ZiLOG, Inc., 450 F.3d 996, 1009 (9th Cir. 2006); Knupfer v. Lindblade (In re Dyer), 322 F.3d 1178, 1192 (9th Cir. 2003). Failure to take immediate affirmative steps to remedy the stay violation creates a "willful" violation of the stay, for which Section 362(k) mandates that a Court "shall" award actual damages. California Employment Devel. Dept. v. Taxel (In re Del Mission Ltd.), 98 F.3d 1147 (9th Cir. 1996). Moreover, § 362 imposes an affirmative duty to discontinue post-petition collection actions immediately. Eskanos & Adler, P.C. v. Leetien, 309 F.3d 1210 (9th Cir. 2002). As such, it is the creditor's responsibility to return the vehicle to the debtor, or take other appropriate action, when it discovers that it has violated the stay. A creditor's retention of the vehicle, once notified of the automatic stay, is an on-going violation until the creditor takes affirmative action to correct the situation. Id.

In this case, the evidence reflects that Cactus Jack was initially notified of the Debtor's filing of a bankruptcy petition and the date and time of the First Meeting of Creditors.

---

**17.** Although Bloom, Abrams, and other cases cited in this Decision were decided prior to the passage of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub.L. 109-8, 119 Stat. 23 ("BAPCPA"), BAPCPA did not substantively amend the portion of the statute mandating damages for stay violations. The section at issue was retained verbatim, but was re-designated Subsection 362(k)(1). Thus, Bloom, Abrams, and other cases decided under Section 362(h) have precedential effect for purposes of this Decision.

8

1 It was an employee of Cactus Jack that failed to take the appropriate steps to note such a filing
2 on the Debtor's file with the Creditor. Cactus Jack had no redundant procedures in place to
3 ensure that all files were appropriately "flagged." Cactus Jack had no procedures in place to
4 allow the third party repossessing the vehicle to contact it when Cactus Jack was not open for
5 business. Thus, the Debtor was embarrassed when the vehicle was improperly repossessed in
6 front of his co-workers. Cactus Jack made no effort to return the vehicle to the Debtor once it
7 discovered, from the Debtor's attorney, that it had improperly repossessed his vehicle. Instead it
8 required the Debtor to retrieve the vehicle from its location. Based upon the foregoing, the Court
9 concludes that Cactus Jack willfully violated the automatic stay. The Court must next consider
10 the damages to be awarded to the Debtor.

### B. Damages to be Awarded to the Debtor

13 Section 362(k)(2) provides that a creditor need only pay the actual damages that a
14 debtor incurs if the creditor believes, in good faith, that Section 362(h) applies to the facts in the
15 case. In re Ramirez, 183 B.R. 583 (9th Cir. B.A.P. 1995). Section 362(h) is a new provision
16 enacted as a result of BAPCPA. It pertains to an individual debtor that has personal property
17 which is secured, in whole or in part, by an obligation to a third party. The Section requires the
18 individual debtor to file a statement of intention, under Section 521 of the Bankruptcy Code, as
19 to what he or she intends to do with the personal property. The debtor must also perform on that
20 intention within the time period provided under the Code.[18] To determine the time period in

---

**18.** The relevant provisions of Section 362(h) are as follows:
(h)(1) In a case in which the debtor is an individual, the stay provided by subsection (a) is terminated with respect to personal property of the estate or of the debtor securing in whole or in part a claim, or subject to an unexpired lease, and such personal property shall no longer be property of the estate if the debtor fails within the applicable time set by section 521(a)(2)--

(A) to file timely any statement of intention required under section 521(a)(2) with respect to such personal property or to indicate in such statement that the debtor

9

which the debtor must perform, Section 521(a)(2)(A) and (B) must be reviewed. They provide:

> (2) if an individual debtor's schedule of assets and liabilities includes debts which are secured by property of the estate--
>
> > (A) within thirty days after the date of the filing of a petition under chapter 7 of this title or on or before the date of the meeting of creditors, whichever is earlier, or within such additional time as the court, for cause, within such period fixes, the debtor shall file with the clerk a statement of his intention with respect to the retention or surrender of such property and, if applicable, specifying that such property is claimed as exempt, that the debtor intends to redeem such property, or that the debtor intends to reaffirm debts secured by such property;
> >
> > (B) within 30 days after the first date set for the meeting of creditors under section 341(a), or within such additional time as the court, for cause, within such 30-day period fixes, the debtor shall perform his intention with respect to such property, as specified by subparagraph (A) of this paragraph; and

In this case, the Debtor timely filed his Statement of Intention at the commencement of his case. He stated that he intended to surrender the vehicle to Cactus Jack. The Section 341 Meeting of Creditors was initially scheduled in this case for January 27, 2009. Thus, under 521(a)(2)(B), the Debtor had thirty days from the first date set for the Meeting of Creditors to perform on his intention, which was to surrender the vehicle. The Debtor should have surrendered the vehicle within thirty days of January 27, 2009, or by February 26, 2009. However, Cactus Jack repossessed the vehicle on January 28, 2009, prior to the surrender date and when the automatic stay was still in place. Thus, Section 362(k)(2) does not apply to this

---

> will either surrender such personal property or retain it and, if retaining such personal property, either redeem such personal property pursuant to section 722, enter into an agreement of the kind specified in section 524(c) applicable to the debt secured by such personal property, or assume such unexpired lease pursuant to section 365(p) if the trustee does not do so, as applicable; and
>
> (B) to take timely the action specified in such statement, as it may be amended before expiration of the period for taking action, unless such statement specifies the debtor's intention to reaffirm such debt on the original contract terms and the creditor refuses to agree to the reaffirmation on such terms.

10

case, and the Court may consider whether actual, as well as punitive, damages should be assessed against Cactus Jack.

In certain circumstances, the Court may also consider whether damages should be assessed against a creditor for the emotional distress that may be caused by a willful violation of the automatic stay. The Ninth Circuit Decision of <u>Dawson v. Washington Mutual Bank (In re Dawson)</u>, 390 F.3rd 1139 (9th Cir. 2004), determined that a debtor's claim for emotional distress was a cognizable claim to be considered by the Bankruptcy Court, stating

> Reading the legislative history as a whole, we are convinced that Congress was concerned not only with financial loss, but also – at least in part – with the emotional and psychological toll that a violation of a stay can exact from an individual. Because Congress meant for the automatic stay to protect more than financial interests, it makes sense to conclude that harm done to those non-financial interest by a violation are cognizable as 'actual damages' that may be recovered by an individual who is injured by a willful violation of the automatic stay,..... 11 U.S.C.§362(h), include damages for emotional distress.

<u>Id.</u> at 1148. The Circuit also concluded that there was a possibility of "frivolous claims," and wanted to limit the foregoing. Therefore, to be entitled to damages for an emotional distress claim, the debtor must "(1) suffer significant harm, (2) clearly establish the significant harm, and (3) demonstrate a causal connection between that significant harm, and the violation of the automatic stay. . ." <u>Id.</u> at 1149. "Fleeting or trivial anxiety or distress does not suffice to support an award; instead, an individual must suffer significant emotional harm. (Citation omitted.)" <u>Id.</u> The debtor need not show that he consulted a doctor or had medical expenses to recover for emotional distress. <u>Id.</u> at 1149-50. The Ninth Circuit has also cited with approval the <u>United States v. Flynn (In re Flynn)</u>, 185 B.R. 89, 93 (S.D.Ga. 1995) case, in which a mother was awarded emotional distress damages in the amount of $5,000, because she was unable to access her deposit account to withdraw funds for her sons birthday party. The damages for emotional distress are considered to be a type of compensatory or actual damages that may be suffered by the debtor.

11

The Debtor presented evidence to this Court that he had actual damages in the amount of $137.36 for the time that he was required to take off from work to recover his vehicle which was wrongfully repossessed. Because Cactus Jack willfully violated the stay, these actual damages may be recovered by the Debtor under Section 362(k)(1).

In this case, the Debtor also suffered embarrassment when his vehicle was repossessed in front of his co-workers, and he suffered the humiliation of not being allowed to remove the personal articles from his vehicle. No medical records or evidence from a doctor need be presented to the Court. The Debtor's testimony was credible and cogent as to the suffering that he incurred. Certainly if a woman may recover $5,000 for the humiliation that she suffered because she could not access her deposit account and subsequently had to cancel a birthday party, the Debtor's humiliation and suffering in front of his co-workers is of equal magnitude. The only point in favor of Cactus Jack is that the Debtor intended, within a thirty-day time frame, to surrender the vehicle. However, the Debtor had not obtained a new, used, or rental vehicle yet, so the Debtor was placed in a difficult, embarrassing, and humiliating situation because of the repossession. Based upon the foregoing, the Court will award the Debtor the sum of $2,000 for the emotional distress that he suffered.[19]

Section 362(k) provides, in pertinent part, that "an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover *punitive damages*" 11 U.S.C. § 362(k) (emphasis added). While the Bankruptcy Code provides for the assessment of punitive damages, it does so usually when the creditor has engaged in malicious, egregious, or vindictive behavior. In re Roche, 361 B.R. 615 (Bankr. N.D.Ga 2005); In re Hampton, 319 B.R. 163 (Bankr. E.D.Ark. 2005); In re Kaufman, 315 B.R. 858 (Bankr. N.D.Cal 2004). Here, the Court already expressed its concerns regarding the behavior of Cactus Jack and its lack of sincerity

---

**19.** This amount seems particularly fitting insofar as the Debtor's girl friend was required to pay in excess of $1,800 to assist the Debtor in obtaining new mounts for the vehicle.

12

throughout the Debtor's humiliating ordeal, however, in light of the fact that the Debtor has received emotional distress damages, punitive damages would not be appropriate under these circumstances.

## IV. CONCLUSION

Based upon the foregoing, the Court concludes that Cactus Jack willfully violated the Debtor's automatic stay by repossessing the Debtor's vehicle, despite having received several forms of notice that the Debtor was involved in an active bankruptcy case. The Debtor is entitled to recover the actual damages, including emotional distress, caused by the stay violation. Mr. Calloway is awarded the sum of $137.36 for his lost wages. The Debtor is also awarded the amount of $2,000 for the emotional distress he suffered. Based upon the foregoing, the Court awards the total amount of $2,137.36 to the Debtor. The Court will execute a separate order incorporating this Memorandum Decision and a form of judgment.

DATED this 26th day of May, 2009.

_____

Honorable Sarah Sharer Curley
United States Bankruptcy Judge

13